**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| **ABC IP, LLC, a Delaware limited liability company,**<br><br>**RARE BREED TRIGGERS, INC., a Texas corporation,**<br><br>**and**<br><br>**RBTM LLC, a Wyoming limited liability company**<br><br>**Plaintiffs.**<br><br>**v.**<br><br>**Upstate Triggers LLC, a South Carolina limited liability company,**<br><br>**Jackson Rolison, an individual,**<br><br>**Cherokee Outfitters, Inc., a South Carolina limited liability company,**<br><br>**City Arsenal Inc., a South Carolina limited liability company,**<br><br>**CLB Guns LLC, a South Carolina limited liability company,**<br><br>**and**<br><br>**Gun Runners LLC, a South Carolina limited liability company,**<br><br>**Defendants.** | ) | CASE NO. ______________<br><br>**COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

This is an action for patent and trademark infringement in which ABC IP LLC (“ABC”), Rare Breed Triggers, Inc. (“Rare Breed”), and RBTM LLC (“RBTM”) (collectively, “Plaintiffs”)

accuse Upstate Triggers LLC, Jackson Rolison, Cherokee Outfitters, Inc., City Arsenal Inc., CLB Guns LLC, and Gun Runners LLC, (collectively, "Defendants") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition as follows:

**PARTIES**

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4. Upon information and belief, Upstate Triggers LLC is a limited liability company organized under the laws of South Carolina with an address of 1413 S Cardiff Trl., Spartanburg, South Carolina 29301.

5. Upon information and belief, Jackson Rolison is an individual residing at 1413 S Cardiff Trail., Spartanburg, South Carolina 29301, who is the owner or an owner of Upstate Triggers LLC and directs its operations, including directing Upstate Triggers LLC to sell products in violation of the Asserted Patents.

6. Upon information and belief, Cherokee Outfitters, Inc. is a limited liability company organized under the laws of South Carolina with an address of 370 Peachoid Road, Gaffney, SC 29341.

7. Upon information and belief, City Arsenal Inc. is a limited liability company organized under the laws of South Carolina with an address of 1210 Poinsett Hwy, Greenville, SC 29609.

8. Upon information and belief, CLB Guns LLC is a limited liability company organized under the laws of South Carolina with an address of 13269 C.R. Koon Highway, Newberry, SC 29108.

9. Upon information and belief, Gun Runners LLC is a limited liability company organized under the laws of South Carolina with an address of 711 W North 1st St, Seneca, SC 29678.

## JURISDICTION AND VENUE

10. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

12. Personal jurisdiction over Defendants is proper in this District because the Defendants reside in and have a regular and established place of business in this District.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in or have committed acts of infringement and have a regular and established place of business in this District.

## BACKGROUND

14. This lawsuit asserts (i) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,578,159 ("the '159 Patent"), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents"); and (ii) trademark

infringement, false designation of origin, and unfair competition with regard to Plaintiffs' well-known FRT trademark.

15. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

16. The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

17. The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit C.

18. The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit D.

19. ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

20. RBTM is the owner, and Rare Breed has the exclusive right to enforce the trademark FRT® and variations thereon ("the FRT Marks"), including the right to enforce the marks against infringers. Since at least 2020, the FRT® mark has been used by Plaintiff Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT® trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed's products. In addition to strong

common law rights in the FRT® trademark, RBTM also owns the following federally registered trademarks and pending applications, including the right to enforce the marks against infringers:

| Mark | Goods | App. No. | Reg. No. | App. Date | Reg. Date |
|---|---|---|---|---|---|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |
| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Plaintiffs' common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks."

21. Rare Breed is the exclusive licensee of the Asserted Patents and the FRT Marks.

22. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

23. Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## THE INVENTIONS

24. A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the

trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

25. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply “follow” the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

26. In contrast, in what Plaintiffs have coined a “forced reset” trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

27. The ’247 and ’159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other

prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a "forced reset" semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

28. The '784 Patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

29. The '403 Patent describes and claims a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) "forced reset" semiautomatic mode.

30. The claims of the patents define the scope of the patented inventions.

**THE INFRINGING DEVICE**

31. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including a Drop In FRD device ("the Drop In FRD"), which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

32. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale the Drop In FRD. For example, Upstate Triggers LLC is previously or is currently making, using, selling, and/or offering for sale the Drop In FRD via the website

https://upstatetriggers.us/ar-15-arp-frts/. On information and belief, Upstate Triggers LLC previously or is currently manufacturing and selling the Drop In FRD to Cherokee Outfitters, Inc., City Arsenal Inc., CLB Guns LLC, and Gun Runners LLC, as shown, for example, in the screenshot below.




In-Store Locations

You can now find select **Upstate Triggers** products available locally at the following South Carolina store locations.

33. Exemplary images of the Drop In FRD are shown below:



UPSTATE TRIGGERS
DROP IN FRD-3 POSITION-CARBON FIBER
$49.75

UPSTATE TRIGGERS

ACCESSORIES | AR-15/ARP FRTS | GLOCK FRTS | SMITH & WESSON FRT | TAURUS FRTS | IN STORE LOCATIONS | PRIVACY POLICY | USER AGREEMENT | SHIPPING & RETURNS | CONTACT US

Home / AR-15/ARP FRTs

## AR-15/ARP FRTs

Shop By Price

Min. | Max. | Update | Sort By: Price: Descending



UPSTATE TRIGGERS
DROP IN FRD
$225.00



UPSTATE TRIGGERS
5 PACK - DROP IN FRD WITH 3 POSITION SELECTOR - CARBON FIBER
$199.75



UPSTATE TRIGGERS
2 PACK - DROP IN FRD WITH 3 POSITION SELECTOR - CARBON FIBER
$95.00

34. The Drop In FRD can operate in at least a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between standard semiautomatic with disconnector and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

## INFRINGEMENT OF THE FRT MARKS

35. On information and belief, Defendants are distributing, advertising, and/or selling products that do not originate with Plaintiffs but that nonetheless bear or are promoted in association with the FRT Marks.

36. Defendants are falsely associating their products with Plaintiffs' well-known FRT Marks.

37. Defendants are advertising their products as "FRT" as shown at: https://upstatetriggers.us/search.php?search_query=FRT. Exemplary highlighted images are shown below:




38. Despite Defendants' marketing, Defendants' products are **not** one of Plaintiffs' FRT products.

39. Defendants' unauthorized use of the FRT Marks to identify and promote their products is likely to mislead consumers into falsely believing that Defendants' products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

40. The only reason Defendants would use the FRT Marks in connection with their products is to trade on the goodwill Plaintiffs have developed in the FRT Marks, and thus Defendants' conduct is willful.

**COUNT I — INFRINGEMENT OF THE '247 PATENT**

41. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

42. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Drop In FRD.

43. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

44. An exemplary comparison of the Drop In FRD, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Drop In FRD is part of a reset trigger mechanism and functions as a cam that in at least one mode, both causes the reset of the trigger and locks the trigger during the cycle of operation.  https://upstatetriggers.us/ar-15-arp-frts/  **Drop In FRD** |

| **’247 Patent, Claim 15** | **The Drop In FRD** |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Drop In FRD (green, blue, and purple) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange).<br><br>(Plaintiff-generated renderings of Drop In FRD created based on observation of Drop In FRD acquired by Plaintiffs, shown here and below) |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br>**Hammer Set Position**<br><br>**Hammer Released Position** |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Drop In FRD (green, blue, and purple) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (brown) has a sear.  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.  **Trigger Member Set Position** |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position.  **Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).  **Disconnector Hook Engaged** |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Drop In FRD has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Drop In FRD, shown in green, blue, and purple, in fire control mechanism pocket)   **Drop In FRD Cam with Lobe and Lever** |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position**<br>In the second position, the cam (green) lobe moves the trigger member (brown), via a link (blue), toward the set position when the cam is in the “forced reset” semi-automatic mode.<br><br>**Cam and Lobe Second Position** |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode,  |
| said cam is in said first position, | . . . the cam (green) is in the first position.  |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | . . . at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.  |
| whereupon in a forced reset semi-automatic mode, | When in the “forced reset” semi-automatic mode,  |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | . . . the cam is in the second position during at least part of the cycle and moves the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook.  |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,  |

| ’247 Patent, Claim 15 | The Drop In FRD |
|---|---|
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm.  |

45. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’247 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Drop In FRD.

46. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 15 of the ’247 Patent.

47. On information and belief, Defendants also contribute to the infringement of the ’247 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Drop In FRD, such as the cam or cam lever arm. The

components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’247 Patent.

48. Defendants have engaged in egregious infringement behavior with knowledge of the ’247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’247 Patent and that the ’247 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’247 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’247 Patent.

49. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’247 Patent pursuant to 35 U.S.C. § 271.

50. By their actions, Defendants’ infringement of the ’247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

51. By their actions, Defendants’ infringement of the ’247 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

52. Defendants’ infringement of the ’247 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

53. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

54. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT II — INFRINGEMENT OF THE '784 PATENT**

55. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

56. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Drop In FRD.

57. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

58. An exemplary comparison of the Drop In FRD, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent, Claim 1 | The Drop In FRD |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Drop In FRD is part of a reset trigger mechanism and functions as an extended trigger member locking device. |

| ’784 Patent, Claim 1 | The Drop In FRD |
|---|---|
| |  [https://upstatetriggers.us/ar-15-arp-frts/](https://upstatetriggers.us/ar-15-arp-frts/)  **The Drop In FRD**  **Drop In FRD Installed** |

| ’784 Patent, Claim 1 | The Drop In FRD |
|---|---|
| | (Plaintiff-generated renderings of Drop In FRD created based on observation of Drop In FRD acquired by Plaintiffs, shown here and below) |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Drop In FRD (yellow, blue, and purple) operates as a locking member and has a first position in which the Drop In FRD locks the trigger member against pulling movement.  **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Drop In FRD (yellow, blue, and purple) is moveable from the first position to a second position where it does not restrict movement of the trigger member.  **Unlocked Second Position** |

| ’784 Patent, Claim 1 | The Drop In FRD |
|---|---|
| the locking member is configured to be movably supported by a frame | The Drop In FRD (yellow, blue, and purple) is movably (pivotally about the axis depicted below) supported by a frame (purple).<br><br> |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Drop In FRD (yellow, blue, and purple) has an upward extending portion (the “lever arm,” yellow) configured to make actuating contact with a surface of the bolt carrier. |

| ’784 Patent, Claim 1 | The Drop In FRD |
|---|---|
| |  |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position.  **Unlocked Second Position** |

| ’784 Patent, Claim 1 | The Drop In FRD |
| --- | --- |
| the locking member having a body portion that is movably supported | The Drop In FRD (yellow, blue, and purple) has a body portion (blue) that is movably supported by a housing (purple).  |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position | The Drop In FRD (yellow, blue, and purple) has an upwardly extending deflectable portion (lever arm).  The below illustrates the lever arm’s (upward extending deflectable portion) total separate travel with an overlay of the lever in both positions without the body portion moving. |

| '784 Patent, Claim 1 | The Drop In FRD |
|---|---|
| |   |

| ’784 Patent, Claim 1 | The Drop In FRD |
| --- | --- |
| and a deflected position. | The lever is now shown deflected independent of the body.  |

59. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’784 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Drop In FRD while selling products.

60. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the ’784 Patent.

61. On information and belief, Defendants also contribute to the infringement of the ’784 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Drop In FRD, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and

adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’784 Patent.

62. Defendants have engaged in egregious infringement behavior with knowledge of the ’784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’784 Patent and that the ’784 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’784 Patent.

63. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’784 Patent pursuant to 35 U.S.C. § 271.

64. By their actions, Defendants’ infringement of the ’784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

65. By their actions, Defendants’ infringement of the ’784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

66. Defendants’ infringement of the ’784 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

67. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

68. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT III — INFRINGEMENT OF THE '159 PATENT**

69. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

70. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '159 patent. Such unlicensed products include the Drop In FRD.

71. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

72. An exemplary comparison of the Drop In FRD, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| **'159 Patent, Claim 1** | **The Drop In FRD** |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a | When installed and used as directed, the Drop In FRD is part of a trigger mechanism that uses a bolt means, for example, a bolt carrier assembly or a blow-back bolt. With the Drop In FRD installed, the trigger mechanism operates in a standard semi-automatic mode and a "forced reset" semi-automatic mode |

| ’159 Patent, Claim 1 | The Drop In FRD |
|---|---|
| second, forced reset semi-automatic mode, the mechanism comprising: |  https://upstatetriggers.us/ar-15-arp-frts/  **Drop In FRD** |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Drop In FRD (yellow, blue, and purple) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange). |

<table>
<tr><th>’159 Patent, Claim 1</th><th>The Drop In FRD</th></tr>
<tr><td></td><td>

(Plaintiff-generated renderings of Drop In FRD created based on observation of Drop In FRD acquired by Plaintiffs, shown here and below)</td></tr>
<tr><td>to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means,</td><td>The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means.<br>

Hammer Set Position</td></tr>
</table>

<table>
<tr><th>’159 Patent, Claim 1</th><th>The Drop In FRD</th></tr>
<tr><td></td><td><br>**Hammer Released Position**</td></tr>
<tr><td>a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and</td><td>The Drop In FRD (yellow, blue, and purple) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface.<br><br><br>**Trigger Member Set Position**</td></tr>
</table>

| ’159 Patent, Claim 1 | The Drop In FRD |
|---|---|
| released positions, | <br>**Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position. |

| **'159 Patent, Claim 1** | **The Drop In FRD** |
|---|---|
| | <br><br>**Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).<br> |

| '159 Patent, Claim 1 | The Drop In FRD |
|---|---|
| |  **Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Drop In FRD has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Drop In FRD, shown in green, blue, and purple, in fire control mechanism pocket)   **Drop In FRD Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position. |

| '159 Patent, Claim 1 | The Drop In FRD |
| --- | --- |
| | <br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe moves the trigger member (brown) toward the set position when the cam is in the "forced reset" semi-automatic mode.<br><br><br>**Cam and Lobe Second Position** |

| | |
|---|---|
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,<br> |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | . . . rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.<br><br>**Disconnector Hook Catches the Hammer** |

| | |
|---|---|
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery,<br><br>**Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and | . . . at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm.<br><br>**Reduced Pressure on Trigger Member Allows Reset** |

| | |
|---|---|
| whereupon in a second mode, | When in the second ("forced reset" semi-automatic) mode,<br> |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | . . . rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam (yellow) acting on the link (blue) to move the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook.<br> |

<table>
<tr><td>and thereafter the bolt means moves forward into battery,</td><td>Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position,<br></td></tr>
<tr><td>at which time the user can pull the trigger member to fire the firearm.</td><td>. . . at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member.<br></td></tr>
</table>

73. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’159 patent.

Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Drop In FRD while selling products.

74. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the ’159 Patent.

75. On information and belief, Defendants also contribute to the infringement of the ’159 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Drop In FRD, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’159 Patent.

76. Defendants have engaged in egregious infringement behavior with knowledge of the ’159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’159 Patent and that the ’159 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’159 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’159 Patent.

77. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’159 Patent pursuant to 35 U.S.C. § 271.

78. By their actions, Defendants’ infringement of the ’159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

79. By their actions, Defendants’ infringement of the ’159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

80. Defendants’ infringement of the ’159 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

81. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

82. Plaintiffs have been substantially harmed by Defendants’ infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

**COUNT IV — INFRINGEMENT OF THE ’403 PATENT**

83. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

84. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’403 patent, including but not limited to claims 38 and 54, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the ’403 patent. Such unlicensed products include the Infringing Device.

85. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’403 patent, including but not limited to claims 38 and 54, literally and/or under the doctrine of equivalents.

86. An exemplary comparison of the Drop In FRD, when assembled and used as intended, with claim 38 of the ’403 patent is illustrated in the chart below:

| **’403 Patent, Claim 38** | **The Drop In FRD** |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Drop In FRD is part of a reset trigger mechanism.  https://upstatetriggers.us/ar-15-arp-frts/  **Drop In FRD** |

| ’403 Patent, Claim 38 | The Drop In FRD |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Drop In FRD (yellow, blue, and purple) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and is adapted to pivot on a transverse hammer pivot axis.  **Drop In FRD** (**Installed**) (Plaintiff-generated renderings of Drop In FRD created based on observation of Drop In FRD acquired by Plaintiffs, shown here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; a trigger member; and | The Drop In FRD is installed along with a disconnector **(orange)** which has a disconnector hook and is adapted to pivot on a transverse disconnector pivot axis, and a trigger member **(brown)**.  **Disconnector and Trigger Member** |

| ’403 Patent, Claim 38 | The Drop In FRD |
|---|---|
| a safety selector adapted to be movable between a standard semi-automatic position | The Drop In FRD interacts with a safety selector adapted to be movable between a standard semi-automatic position,  **Drop In FRD (installed) in Standard Semi-Automatic Position** |
| and a forced reset semi-automatic position, | . . . and a “forced reset” semi-automatic position,  **Drop In FRD (installed) in “Forced Reset” Semi-Automatic Position** |

| ’403 Patent, Claim 38 | The Drop In FRD |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated.  |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange).  |

| ’403 Patent, Claim 38 | The Drop In FRD |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm.  |

87. An exemplary comparison of the Drop In FRD, when assembled and used as intended, with claim 54 of the ’403 patent is illustrated in the chart below:

| ’403 Patent Claim 54 | Drop In FRD |
|---|---|
| 54. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Drop In FRD is part of a forced reset trigger mechanism.<br><br>https://upstatetriggers.us/ar-15-arp-frts/<br><br>**Drop In FRD** |

| ’403 Patent Claim 54 | Drop In FRD |
|---|---|
| a trigger member configured to pivot about a transverse axis; | The Drop In FRD is installed in a fire control mechanism pocket along with a trigger member that is configured to pivot about a transverse axis.  |
| a hammer | The Drop In FRD (Green, Blue, and Magenta) is installed in a fire control mechanism pocket along with a hammer (red).  **Drop In FRD (Installed)** (Plaintiff-generated renderings of Drop In FRD above and below) |

| ’403 Patent Claim 54 | Drop In FRD |
|---|---|
| a disconnector operatively associated with the trigger member and the hammer; | The Drop In FRD is installed along with a disconnector (orange) which is operatively associated with the hammer (Red) and trigger (Brown).  **Disconnector and Trigger Member** |
| a locking member operatively associated with the trigger member; | The Drop In FRD uses the cam (Green) and link (Blue) in combination as a locking member and they are operatively associated with the trigger member.  |

| | |
|---|---|
| Wherein cycling of the action causes the trigger member to be forcibly returned to a set position in at least one operating mode; and | When using a Drop In FRD, the cycling of the action causes the trigger member to be forcibly returned to the set position in at least one operating mode.   |

| ’403 Patent Claim 54 | Drop In FRD |
|---|---|
| | <br>**Reset is Forced**<br> |

| ’403 Patent Claim 54 | Drop In FRD |
|---|---|
| wherein the trigger mechanism includes a selector inter-face structured to cooperate with a selector having at least two discrete selectable positions including:<br>(i) a standard semi-automatic position; and | The Drop In FRD interacts with a safety selector adapted to be movable between a standard semi-automatic position,<br><br>**Drop In FRD (installed) in Standard Semi-Automatic Position** |
| (ii) a forced reset semi-automatic position, | . . . and a forced reset semi-automatic position,<br><br>**Drop In FRD (installed) in Forced Reset Semi-Automatic Position** |

| ’403 Patent Claim 54 | Drop In FRD |
|---|---|
| Such that rotation of the selector to the forced reset position enables said forced reset operating mode. | When the safety selector is in the forced reset position the forced reset operating mode is enabled.  |

88. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’403 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products.

89. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claims 38 and 54 of the ’403 Patent.

90. On information and belief, Defendants also contribute to the infringement of the ’403 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Device, such as the trigger assembly or the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are

specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’403 Patent.

91. Defendants have engaged in egregious infringement behavior with knowledge of the ’403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’403 Patent and that the ’403 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’403 Patent.

92. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’403 Patent pursuant to 35 U.S.C. § 271.

93. By their actions, Defendants’ infringement of the ’403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

94. By their actions, Defendants’ infringement of the ’403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

95. Defendants’ infringement of the ’403 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

96. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

97. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT V — FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114(1)**

98. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

99. As described above, Plaintiff RBTM is the owner and Plaintiff Rare Breed is the exclusive licensee of the FRT Marks in connection with firearm triggers.

100. The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff RBTM owns all right, title, and interest in and to these federal trademark registrations.

101. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

102. The reputation Plaintiffs have built in the FRT Marks is of great value to Plaintiffs.

103. Plaintiffs' use of and rights in the FRT Marks predate any use by Defendants of FRT.

104. Defendants are wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

105. Defendants' use of the FRT Marks was and is without Plaintiffs' consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship,

endorsement, or affiliation of Defendants' products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

106. Defendants' unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

107. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the FRT Marks and any mark confusingly similar to the FRT Marks.

108. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT VI — FALSE DESIGNATION OF ORIGIN**
**15 U.S.C. § 1125(A)**

109. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

110. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendants.

111. Plaintiffs' common law rights in the FRT Marks predate Defendants' infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

112. Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

113. Defendants' actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendants' goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

114. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

115. Defendants' acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

116. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

117. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT VII — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

118. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

119. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous use of the marks since at least as early 2020, prior to any use of FRT by Defendants.

120. Plaintiffs' common law rights in the FRT Marks predate Defendants' infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

121. Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

122. Defendants' use of FRT was and is without Plaintiffs' consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' goods and services. As such, Defendants' acts constitute trademark infringement and unfair competition under common law.

123. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

124. Defendants' acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

125. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using FRT or any other mark confusingly similar to the FRT Marks.

126. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT mark, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendants;

b. Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. That Defendants willfully infringed Plaintiffs' registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e. That Defendants committed willful acts of false designation of origin through their unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f. That Defendants engaged in conduct constituting unfair competition under applicable law;

g. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

h. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries,

parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

i. Consistent with the above, order Defendants to (1) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendants' custody or control; and (2) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

j. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

k. An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

l. An award of all profits received by Defendants from sales and revenues of any kind made as a result of their trademark infringement and unfair competition;

m. An award of all damages sustained by Plaintiffs as a result of Defendants' infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

n. A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

o. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: September 8, 2026

Respectfully submitted,

*_/s/ Scott A. Cole_*

Scott A. Cole (Fed. Id. 14574)
scole@dority-manning.com
Tim F. Williams (Fed. Id. 6276)
timw@dority-manning.com
**DORITY & MANNING, P.A.**
P. O. Box 1449
Greenville, SC 29602-1449
Telephone: (864) 271-1592
Facsimile (864) 233-7342

Glenn D. Bellamy (Pro Hac Vice forthcoming)
**WOOD HERRON & EVANS LLP**
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

Matthew A. Colvin (Pro Hac Vice forthcoming)

Texas Bar No. 24087331
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

*Attorneys for Plaintiffs*
*ABC IP, LLC, Rare Breed Triggers, Inc., and RBTM LLC*